CULPEPPER, Judge.
This is a suit for damages arising out of an automobile accident which occurred on March S, 1958 in the Parish of East Baton Rouge involving a 1955 Studebaker pick-up truck owned by Jere Howard, Sr., and being driven by his minor son, Jere Ploward, Jr., and a 1955 Ford automobile owned by Nelson Johnson, and being driven by his wife, Elizabeth S. Johnson. The Howard vehicle was covered by liability insurance issued by Southern Farm Bureau Casualty Insurance Company, also named as a defendant. The Johnson vehicle was covered by collision insurance issued by Service Fire Insurance of New York, and said company paid the sum of $489.82 to Nelson Johnson, pursuant to said policy, and was subrogated to that extent to the rights of said Nelson Johnson. Service Fire Insurance Company has filed a suit to recover against Jere Howard, Sr. and Southern Farm Bureau Casualty Insurance Company, the amount paid for the property damage to the Johnson vehicle. Elizabeth Johnson has sued individually for personal injuries received in the accident, and these two cases were consolidated for the purpose of trial in the lower court. Judgments were rendered in both suits rejecting the demands of the plaintiffs and dismissing their suits. No appeal was taken by Service Fire Insurance Company of New York, and this Court is therefore concerned only with the appeal in Suit Number 67,403, which was brought by Elizabeth S. Johnson against defendants.
The accident occurred at approximately 7:10 P.M. in the City of Baton Rouge at the intersection of Scenic Highway and Gulf States Road. Scenic Highway is a four lane thoroughfare which runs north and south. Gulf States Road runs east and west and intersects Scenic Highway on the west side, thus creating a T-type intersection. One hundred seven feet north of the intersection of Gulf States Road and Scenic Highway, there is a street running east and west which intersects Scenic Highway on the east side thereof, said street being identified as “Farrar Street”. To the south of the intersection of Gulf States Road and Scenic Highway lies another such intersecting street, which also intersects Scenic Highway on the east side thereof and is known as Evangeline Street. A diagram of this complicated intersection and the signal light system which was in existence at the time of the accident is filed in the record. At the time of the collision there was a signal light at the intersection of Farrar Street and Scenic Highway for vehicles proceeding south on Scenic Highway, and there were two signal lights at the intersection of Gulf States Road and *201 Scenic Highway, one facing west for traffic coming out of Gulf States Road onto Scenic Highway, and the other facing south for the traffic proceeding north on Scenic Highway.
The sequence of the traffic signals at this complicated intersection was as follows: Northbound Scenic Highway traffic got a green light for 12 seconds during which time southbound Scenic Highway (at the Farrar Street intersection) did not move and Gulf States Road traffic did not move. After this 12 second interval, then southbound Scenic Highway traffic had a green light which continued simultaneously with the green light for northbound Scenic Highway traffic for approximately 20 seconds. When the light for southbound Scenic Highway traffic turned red, then the light of traffic on the Gulf States Road turned green. It was estimated by Mr. Joe Chron-ister, the traffic engineer for the City-Parish, that the caution period for traffic traveling south on Scenic Highway from the Far-rar Street intersection across the intersection with Gulf States Road was approximately seconds. It was timed in such a manner that vehicles entering the Far-rar Street intersection just as the caution light came on had time to pass through the intersection of Gulf States Road and Scenic Highway before the light turned green for traffic proceeding east on the Gulf States Road.
The above detailed description of the signal light system is given for the purpose of showing that at no time could the plaintiff, who was traveling east on Gulf States Road and the defendant’s truck which was traveling south on Scenic Highway, have had a green signal light at the same time. The sole issue in this case is whether the plaintiff or defendant’s truck had a green light.
The plaintiff, a 34 year old colored female who had been working at the Ethyl Corporation for a period of 13 years as an attendant in the cafeteria, testified that she left her place of employment about 7:05 P.M. and took her customary route home via Gulf States Road. It was dark and raining and she drove slowly with her headlights on. She testified that when she reached the intersection of Gulf States Road and Scenic Highway, the light changed from caution to red and she came to a full stop, waited until the light turned green, (which was a period of 12 seconds, according to the testimony of Mr. Chronis-ter, the traffic expert) then looked to the north, which was the direction from which the Howard vehicle was coming and did not see any traffic coming, then looked to the south and saw a car headed north on Scenic Highway had stopped, and then she pulled out into the intersection. When the front end of her automobile had gone approximately 2 feet past the center ridge in Scenic Highway, she heard a crash and knew she was hit. At no time did the plaintiff see the defendant’s car coming before the collision. The plaintiff was planning to turn left and go north on Scenic Highway. Plaintiff testified that defendant’s vehicle struck the left side of her automobile at about the left front fender and then slid down the left side of her car. The defendant’s vehicle came to rest with its front one-half in the west bound lane of Gulf States Road. Plaintiff’s vehicle came to rest diagonally across the center of Scenic Highway and heading north. Neither vehicle traveled but a few feet after the collision.
The plaintiff testified further that immediately after the accident she got out of her car and saw Leon Shows, a fellow employee at Ethyl Corporation, who was a passenger in an automobile -being driven by Oscar Stewart following along behind plaintiff on Gulf States Road. Plaintiff first testified that immediately after the accident, Stewart parked his vehicle on Gulf States Road, a short distance from Scenic Highway, but on cross-examination she admitted that she was not sure where the Stewart vehicle had been parked.
The plaintiff’s witness, Oscar Stewart, also one of the plaintiff’s fellow employees *202 at Ethyl Corporation, first testified under direct examination that he had been following along behind plaintiff on Gulf States Road at a distance of six or seven car lengths behind her, and that he saw plaintiff stop at the light which was red. Stewart testified that as he moved on up to a distance of three or four car lengths behind plaintiff and stopped, the light turned green and she pulled off into the intersection and was hit by the truck. However, under cross-examination, Stewart changed his testimony and stated that he was not sure whether the plaintiff stopped for the red light or just slowed down, and further changed his testimony by stating that he did not stop until after the collision, at which time he hit his brakes, flooded out his motor and came to rest with approximately the front one-half of his car out in the southbound lane of Scenic Highway. This change in Stewart’s testimony was made after counsel for the defendant brought to his attention a written statement which he had made previous to trial in which Stewart said that the plaintiff did not stop at the signal light.
The plaintiff’s witness, Leon Shows, testified under direct examination that he was a passenger on the front seat of the Stewart vehicle, that they were following along behind the plaintiff on Gulf States Road and that the the signal light was green as they approached Scenic Highway, so Stewart did not have to stop. Shows then testified that he saw plaintiff’s car enter the intersection on a green signal light and saw her automobile hit by the truck. Under cross-examination, Shows changed his testimony completely and stated that as they came up behind plaintiff, she was stopped for the light, which was red, and that Stewart also stopped three or four car lengths behind plaintiff, and then the light turned green and plaintiff pulled off into the intersection and Stewart pulled off behind her.
In passing, it must be noted at this point that the testimony of both of plaintiff’s witnesses, Stewart and Shows, is contradictory to that of plaintiff in that she stated that as she approached the traffic signal it turned from caution to red and she had to stop there until it turned green again.
Returning to the testimony of Leon Shows, we find that he stated on direct examination that after the accident the police officers arrived and one of them was interrogating Shows, Elizabeth Johnson and Jere Howard in the police vehicle, and at that time shows heard Jere Howard admit that he ran a red light. This testimony by Shows is denied by Jere Howard and by both of the police officers. The officers testified that they made a report of this accident and no charges were filed against either driver because neither one would admit running the red light. The police officers stated positively that if Jere Howard had admitted such a violation, a charge would have been made against him.
Now turning to the testimony of the defendant’s witness, we find that Jere Howard, Jr., the driver of the 1955 Studebaker truck, testified that on the night in question they were proceeding in a southerly direction on Scenic Highway at a speed of about 40 miles per hour, which, according to the testimony of the police officer, was the speed limit, and as he approached the signal light at Farrar Street, it was green and remained green until he passed underneath it. Then as he approached Gulf States Road he saw the plaintiff’s vehicle suddenly come out into the intersection. He sounded his horn, applied his brakes and skidded sideways, the front of his truck striking the left side of plaintiff’s automobile. After the impact he continued skidding sideways a short distance and his truck came to rest with about the front one-half thereof up in the west bound lane of Gulf States Road. Young Howard testified positively that he did not see any other vehicle following close behind plaintiff’s automobile nor did he see any other vehicle which stopped there at the intersection near plaintiff’s automobile immediately after the accident. This, of course, is another contradiction between the testimony of plaintiff’s witnesses *203 and that of defendant’s witnesses. It is almost impossible to understand how Jere Howard could have failed to see the Stewart vehicle following plaintiff’s car and stopping in the intersection after the accident. The testimony of one or the other must be in error.
Douglas Burke, a young man 16 years of age, who was a passenger in the Howard truck, testified to the same effect as Jere Howard. It is noteworthy that Burke also did not see any other vehicle immediately following plaintiff which stopped in the intersection. Burke did testify that he saw Leon Shows at the scene about ten minutes after the accident.
Carl W. Howard, a cousin of the driver of the defendant’s truck, happened by coincidence to he going north on Scenic Highway at about the time of the collision. He testified that when he was about 2j£ blocks from the intersection at which the collision occurred, he saw the lights of an approaching vehicle, which he later learned was defendant’s truck, turn quickly- to the right toward Gulf States Road in an unusual manner and when he reached the signal light at Gulf States Road for northbound traffic on Scenic Highway, it turned to caution and then red and he had to stop. He then noticed the two vehicles which were involved in the accident. If this testimony is correct, it corroborates Jere Howard and Douglas Burke because if the traffic signal opposing northbound traffic on Scenic Highway was green as Carl W. Howard approached it, then the signal light for southbound traffic on Scenic Highway was necessarily green at that time.
The general rule of law is well established that where the credibility of witnesses must be passed upon, the conclusions of the trial judge will not be disturbed unless manifestly erroneous.
In the case of Spears v. Traders and General Insurance Company, La.App. 1st Cir., June 30, 1955, rehearing denied Sept. 15, 1955, writ denied Nov. 7, 1955, 82 So.2d 77, 80, this Court expressed the rule to be:.
“The question presented is purely a factual one. As stated before, the testimony of Spears and his wife and that of Gipson and his wife is in hopeless-conflict. We are unable to find anything in the record which would warrant a reversal of the findings by the trial judge and it is well settled that his conclusions should not be disturbed unless clearly erroneous.”
In the case of Watts v. Fisher Lumber Corporation, La.App. 2nd. Cir., April 28, 1939, 189 So. 301, 303, in speaking of the doctrine, the Court said:
“It is to be seen from the foregoing that the instant case presents only issues of fact; that in view of the conflicting testimony that the record furnishes, a correct determination of these requires that the credibility of the witnesses be passed upon. Our-position for making such decision is not so good as that of the trial judge who saw and heard the persons giving the testimony. It is well settled that,
“‘Conclusions of the trial judge on questions of fact with respect to credibility of witnesses and weight to be given their testimony are entitled to great weight, and his judgment; when based on facts alone, will not be disturbed unless clearly erroneous.’”.
As is shown by the above discussions of the testimony of the various witnesses for plaintiff and for defendant, the plaintiff and her two witnesses contradicted not only themselves but each other. Their statements on the witness stand were so confused and contradictory as to seriously affect their credibility. On the other hand, the witnesses for the defendant presented a consistent and logical theory of how the accident occurred.
The record does not contain the reasons for the lower Court’s judgment, *204 and we therefore do not know whether he found that this accident was caused by the sole negligence of plaintiff, or that plaintiff was barred by her own contributory negligence, or that plaintiff failed to prove her case by a preponderance of the credible evidence; however, it is our opinion that the lower Court would have been completely justified in denying plaintiff’s demands on any of these grounds. Certainly we can find no manifest error in his decision.
For the reasons hereinabove set forth, the judgment appealed from the lower Court is affirmed.